IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

AMERICAN SELECT INSURANCE COMPANY,

        Plaintiff,

v.                              CIVIL ACTION NO.   2:24-cv-00145

RICK WOODYARD, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff American Select Insurance Company's ("Plaintiff") Motion for Summary Judgment. (ECF No. 21-1.) For the reasons stated herein, the motion is **DENIED**.

### I.   BACKGROUND

This matter arises out of the death of a 6-year-old child (the "Decedent"). (ECF No. 1 at 2, ¶ 7.) The Decedent's father, Defendant Richard W., and mother, Defendant Ladda W., were divorced and allegedly had shared custody of the Decedent. (*Id.* ¶¶ 8–10.) The Complaint claims that the Decedent wandered away from his father's home and drowned in a neighbor's swimming pool. (*Id.* ¶ 8.) At the time of the child's death, Defendant Richard W. had a homeowner's insurance policy (the "Policy"), which excludes coverage for bodily injury to him or any "family member." (*Id.* at 3–7, ¶¶ 15–16.)

Defendant Rick Woodyard is the Administrator of the Estate of the Decedent. (*Id.* at 1, ¶ 2.) Plaintiff claims that "[c]ounsel for the Estate of [the Decedent] has notified [Plaintiff] that the

Estate seeks to pursue a claim against Defendant Richard W. related to the death" of his child. (*Id.* at 3, ¶ 11.) Consequently, on March 22, 2024, Plaintiff brought this action seeking declaratory relief that the Policy does not provide coverage for the wrongful death claim arising from the death of decedent and, thus, Plaintiff has no duty to defend or indemnify Defendant in connection with any claim brought against him or on behalf of the Estate of Decedent in connection with his death. (*Id.* at 8.) Plaintiff also demanded a jury trial to determine any questions of fact. (*Id.*)

On December 9, 2024, Plaintiff filed the pending Motion for Summary Judgment. (ECF Nos. 21-1, 21-6.) Defendants Woodyard, Richard W., and Ladda W. (collectively "Defendants") filed a Response, (ECF No. 25), and Plaintiff filed a Reply, (ECF No. 26). As such, this motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. In pertinent part, this rule states that a court should grant summary judgment if "there is no genuine issue as to any material fact." Summary judgment should not be granted, however, if there are factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Courts at this stage do not resolve disputed facts, weigh evidence, or make determinations of credibility. *See Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Thus, when evaluating these factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). Instead, the moving party is entitled to

summary judgment only if the record, as a whole, could not lead a trier of fact to find for the non-moving party.  *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

"Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  A dispute of material facts is "genuine" if, in viewing the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  *See Anderson*, 477 U.S. at 248.

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ."  *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).  "This burden may be met by use of the depositions and other discovery materials."  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).  Once the moving party meets its burden, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Should a party fail to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial."  *Id.* at 323.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 247–48.  Indeed, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."

3

*Liberty Lobby*, 477 U.S. at 256; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts"). "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. A non-movant who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will lose at summary judgment because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### III. DISCUSSION

The operative question posed by the parties' briefs is whether Decedent was covered under the terms of the Policy. (ECF Nos. 21-6; 25; 26.)

"A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation." *World-Wide Rts. Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). "[S]ummary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence." *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007). If the contract is deemed unambiguous on the dispositive issue, summary judgment is proper. *See id.* If there is ambiguity, the court "may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant summary judgment on that basis." *Id.* (quoting

4

*Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993) (internal quotation marks omitted)).

Under West Virginia law,[1] "'[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.'" Syl. Pt. 6, *Ascent Res. – Marcellus, LLC v. Huffman*, 851 S.E.2d 782 (W. Va. 2020) (quoting Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E.2d 626 (W. Va. 1962)). "Whether a contract is ambiguous, or how a contract should be interpreted, involves a question of law to be determined by the court." *Isaacs v. Bonner*, 694 S.E.2d 302, 307 (W. Va. 2010) (citing *Berkeley Cnty. Pub. Serv. Dist.*, 162 S.E.2d at 200; *Wood v. Acordia*, 618 S.E.2d 415, 420 (W. Va. 2005)).

"Contract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. Pt. 6, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 569 S.E.2d 796 (W. Va. 2002); *see also Lee v. Lee*, 721 S.E.2d 53, 56 (W. Va. 2011) ("Generally, whenever the language of a contractual provision is reasonably susceptible of two different meanings or where reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." (citing Syl. Pt. 1, *Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639 (W. Va. 1985))). Yet "[t]he mere fact that the parties do not agree to the construction of a contract does not render it ambiguous." Syl. Pt. 1, *Berkeley Cnty. Pub. Serv. Dist. v. Vitro Corp. of Am.*, 162 S.E.2d 189 (W. Va. 1968).

---

[1] Generally, federal courts apply state substantive law and federal procedural law in diversity cases. *See Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 109 (4th Cir. 1995) (citing *Stonehocker v. General Motors Corp.*, 587 F.2d 151, 154 (4th Cir.1978)).

5

The terms of a contract "are not to be construed in a vacuum, but are to be read in their context."  *Chesapeake Appalachia, L.L.C. v. Hickman*, 781 S.E.2d 198, 213 (W. Va. 2015).  "'As with other contracts, the language of a lease agreement must be considered and construed as a whole, giving effect, if possible to all parts of the instrument. Accordingly, specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract.'"  *Id.* (quoting Syl. Pt. 3, *Moore v. Johnson Serv. Co.*, 219 S.E.2d 315 (W. Va. 1975)).

In this case, the Policy excludes coverage for "bodily injury to [Defendant Richard W.] or an insured."  (ECF No. 21-5 at 68.)  In addition to Defendant Richard W., the Policy's definition of an "insured" includes "any family member."  (*Id.* at 33.)  The Policy defines "Family Member," in pertinent part, as follows: "A person related to [Richard W.] by blood, marriage or adoption who is a resident of [his] household. This includes a ward, foster child, or any person under the age of 21 who is in [Richard W.'s] care or the care of a Family Member."  (*Id.*)  This definition of "Family Member" presents two issues.

First, the Policy is not clear on whether someone "under the age of 21 who is in [Richard W.'s] care]" must also be a "resident of [Richard W.'s] household."  (*See generally id.*)  Defendants argue that both conditions must be satisfied.  (*See* ECF No. 25 at 3–4.)  Plaintiff does not address this argument, (*see generally* ECF No. 26), but the definition could also be interpreted as only requiring either (a) a related person who is a resident of the household *or* (b) a person under the age of 21 who is in the care of the insured.  Thus, because the term "Family Member" can support "reasonable differences of opinion as to the meaning of words employed and obligations

6

undertaken," it is ambiguous, and summary judgment is inappropriate. *See Cummings*, 569 S.E.2d 796.

Second, the term "resident of [the] household" is not defined. (*See* ECF No. 21-5 at 33.) Indeed, the Supreme Court of Appeals of West Virginia ("SCAWV") found that an insurance policy was ambiguous because the phrase "resident of your household" was not defined. *See Farmers Mut. Ins. Co. v. Tucker*, 576 S.E.2d 261, 270 (W. Va. 2002) (reasoning that, because "the phrase 'resident of your household' is not defined" and was susceptible to "differing but equally reasonable constructions . . . the policy language is ambiguous and must be construed").

The SCAWV did provide the following guidance for Courts to construe the meaning of the phrase:

> [I]n a homeowners' insurance policy that does not otherwise define the phrase "resident of your household," the phrase means a person who dwells-though not necessarily under a common roof-with other individuals who are named insureds in a manner and for a sufficient length of time so that they could be considered to be a family living together. The factors to be considered in determining whether that standard has been met include, but are not limited to, the intent of the parties, the formality of the relationship between the person in question and the other members of the named insureds' household, the permanence or transient nature of that person's residence therein, the absence or existence of another place of lodging for that person, and the age and self-sufficiency of that person.

*Id.* Yet, "because a determination of residency depends on the intent of the parties, *it is typically a question of fact that cannot be determined through a motion for summary judgment*." *Id.* (emphasis added).

Here, Plaintiff argues that the Decedent was a resident of Defendant Richard W.'s household because Defendant had legal custody of Decedent at the time of his death pursuant to the terms of the Final Divorce Decree. (ECF No. 21-6 at 11.) Defendants disagree.[2] They

---

[2] Defendants note that Defendant Richard W. denied that he had shared custody of the Decedent in his Answer to the

7

claim that, because the custody arrangement provided that the Decedent spend more time with Defendant Ladda W., Defendant Richard W. "was only provided visitation" of the Decedent—as opposed to "shared custody."[3]  (ECF No. 25 at 11.)

Looking at the Divorce Decree, the "Parenting Plan provides for the [Decedent] to "reside primarily with the Mother,"[4] and Defendant Ladda W. was designated as the Decedent's custodian pursuant to West Virginia Code § 48-9-602.  (ECF No. 21-3 at 6; *see also* W. Va. Code § 48-9-602 ("[A] parenting plan shall designate the parent with whom the child is scheduled to reside the majority of the time as the custodian of the child.").)  Indeed, during the school year, "[t]he principal residence of [the Decedent] shall be [Defendant Ladda W.'s residence]," and "[t]he time spent by the father with his son shall be . . . [e]very weekend, except the first weekend of each month" and every Wednesday "commencing at the end of school."[5]  (*See* ECF No. 21-3 at 7.)  The custody arrangement differed for summers and holidays.[6]  (*Id.* at 7–9.)

At bottom, the Policy does not define the term "resident of your household," and the Court does not find the Divorce Decree to be "dispositive" on this interpretative issue.[7]  *See Potomac*

---

Complaint.  (*See* ECF No. 25 at 2, 8; *see also* ECF No. 12 at 2–3, ¶ 6.)  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 256.

[3] In response, Plaintiff delves into child custody law in West Virginia.  (ECF No. 26 at 3–4.)  However, general principals of law do not speak to the parties' intent.  *See Tucker*, 576 S.E.2d at 269 (noting that other courts have stated that "[t]he controlling factor is the intent, as evinced primarily by the acts, of the person whose residence is questioned").

[4] This Court has distinguished the phrase "household," as discussed in *Tucker*, from the phrase "resides primarily." *Lafferty v. State Farm Mut. Auto. Ins. Co.*, No. 2:10–CV–00175, 2011 WL 777886 (S.D. W. Va. Feb.25, 2011) (Goodwin, J.).

[5] Defendants argue that the Defendant Richard W. did not have custody of the Decedent at the time of the incident because he was sent home early from school that Wednesday "much before the end of the school day."  (ECF No. 25 at 6; *id.* at 8.)  Plaintiff calls this argument "preposterous."  (ECF No. 26 at 5.)

[6] Plaintiff argues that "the Divorce Decree mandates that Richard W. and Ladda W. each had custody of [the Decedent] at various times."  (ECF No. 26 at 6.)  However, as provided above, the Residential School Year Schedule, which was applicable at the time of the Decedent's death, did not specifically use the term "custody."  On the other hand, the Summer Schedule does explicitly state that Defendant Richard W. had "custody and care" of the Decedent at various times.  (ECF No. 21-3 at 7.)

[7] Defendants also assert that the police report listed the Decedent's home address as that of his mother's residence.

8

*Inv. Props., Inc.*, 476 F.3d at 235. It may well be that the parties intended the Decedent to reside at the homes of both Richard W. and Ladda W. *See Tucker*, 576 S.E.2d at 266 ("A [person] may have several residences."); *see also id.* at 267–68 (acknowledging that other courts have found that children of divorce "often leave belongings at both homes, have a room or area of their 'own' in each home, and until the child expresses another intent, generally hold that the child is a resident of both homes"). Nevertheless, because the Policy is ambiguous,[8] summary judgment is inappropriate. *See Cummings*, 569 S.E.2d 796.

Accordingly, Plaintiff's Motion for Summary Judgment, (ECF No. 21-1), is **DENIED**.

### IV.    CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment, (ECF No. 21-1), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    August 28, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

(ECF No. 25 at 11; *see also* ECF No. 21-2 (police report).) Conversely, Plaintiff claims that the Decedent's Death Certificate identify Defendant Richard W.'s address as the child's legal address. (*See* ECF No. 1 at 3, ¶ 11; *see also* ECF No. 21-4 (death certificate).) Thus, these pieces of evidence are not dispositive, either.

[8] Plaintiff claims that Defendants are attempting to "re-litigate the custody issue which was decided by the Divorce Decree" which is "barred by the doctrine of collateral estoppel." (ECF No. 26 at 5.) However, because Plaintiff did not provide a collateral estoppel analysis, the Court will not consider the issue.